## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **JOHNNY PHAM, Individually and on Behalf of Others Similarly Situated,** | **Case No. _____** |
| **Plaintiff** | |
| **v.** | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| **AUTONATION, INC.  and TEXAN FORD, INC. d/b/a AUTONATION FORD KATY,** | |
| **Defendant** | |

## ORIGINAL COMPLAINT

Plaintiff, Johnny Pham, individually and for others similarly situated, brings this action against his former employers, AutoNation Inc. and Texan Ford Inc., d/b/a AutoNation Ford Katy, and alleges as follows:

### JURISDICTION

1.      Plaintiff brings this claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. to recover unpaid overtime compensation under §16(b) of the FLSA. This Court has jurisdiction under 28 U.S.C. §1331.

### PARTIES

2.      Plaintiff, Johnny Pham, individually and for others similarly situated, is an individual who is a resident of the State of Texas.

3.      Defendant, AutoNation, Inc. ("AutoNation") is an American corporation that is organized under the laws of the State of Florida. Defendant may be served through its registered agent Corporation Services Company at 1201 Hays Street, Tallahassee, FL or wherever it  may be found.

4.      Defendant, Texan Ford Inc., d/b/a Auto Nation Ford Katy ("AutoNation Ford") is a Texas corporation that is organized under the laws of the State of Texas. Defendant has its principal place of business in Katy, Texas. Defendant may be served through its registered agent, Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

## VENUE

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a significant portion of the facts giving rise to this lawsuit occurred in this District. Specifically, Pham performed work for Defendants in Harris County.

## COVERAGE UNDER THE FLSA

6.      At all times hereinafter mentioned, Defendants was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

7.      At all times hereinafter mentioned, Defendants was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

8.      At all times hereinafter mentioned, Defendants was and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

2

9.      At all times hereinafter mentioned, Plaintiff and the Collective Members (as defined below) were engaged in commerce or in the production of goods for commerce per 29 U.S.C. §§ 206-207.

### THE FACTS

10.     Defendants primary business function consists of the retail sale and servicing of new and pre-owned automobiles.

11.     Defendants Plaintiff to work at their car dealership as a technician who tinted car windows.

12.     Plaintiff and the Class Members were employed by Defendants as Non-Certified Technician (specializing in window tinting) in their Service Department.  This position was also referred to as Tinting Specialist and was paid on a piece rate basis for each vehicle they tinted.

13.     Plaintiff worked with other Tinting Specialists.

14.     Defendants misclassified Plaintiff and all Tinting Specialists as exempted.

15.     Plaintiff was not paid on a commission.

16.     Defendants paid Plaintiff and all Tinting Specialist a flat rate for each vehicle they tinted.

17.     Defendants paid the Tinting Specialists two types of flat rate: one rate for tinting two door vehicle and a second flat rate for tinting vehicles with four doors or more.

18.      There is no correlation between the flat-rate Defendants paid per vehicle tinted and either the labor hours charges or the overall price passed on to the customers.

19.     Defendant AutoNation pays all Tinting Specialist at all dealership across the country on a a "piece rate" system where the workers are paid a flat rate per vehicle, they tinted regardless of the amount charged to the customer.

20.     Window tinting is a common add-on at Defendants' AutoNation dealerships.

21.     Defendants increase the gross cost of the cars they sell by adding window tinting as an accessory or add-on to the vehicles they sell.

3

22.     By adding the window tinting to the vehicles before the sale, the Defendants is able to profit from the window tin too.  The dealership adds the cost of the window tint to the gross cost of the vehicle.

23.      Defendants charge customers for window tinting based on "flag hours" which means the dealership uses industry labor guides to determine the labor cost of the repair job or work at issue. The labor hours the Defendants charge the customers for window tinting often time do not correlate with the actual time it takes for Plaintiff or the Class members to complete the work.

24.     The cost the dealer quotes the customers for window tinting are negotiable and as a result the flat rate pay to Plaintiff and Class Members do not correlate with the labor charges to the customer.

25.     Defendants permit the employees in the sales department to negotiate a discounted price for window tinting.

26.     When the Defendants adjust the customer's bill for the window tint, they do not change how much they pay Plaintiff or the Class Members.

27.     No matter how much the Defendants charged the customer, they paid Plaintiff and Class Members on a "flat rate" basis for each window tint.

28.     The only variation in the flat rate Defendants pay the Plaintiff and the Class Members is based on how many doors the vehicle has. For example, Defendants paid Plaintiff $25 to tint a vehicle that had two doors and $50 to tint a vehicle that hand four or more doors.

29.     No matter how much the Defendants adjust the cost of the window tint above or below their target price, they still paid Plaintiff and the Class Members the same flat rate per vehicle.

4

30.    At all times relevant to this case, the Defendants had knowledge of Plaintiffs regular and overtime work. Defendants set Plaintiff's work and hours of work. Plaintiff's work benefitted Defendants.

31.    Plaintiff and Class Members regularly worked over forty hours a week in order to complete the tint installation assigned by Defendants.

32.    Defendants violated the FLSA record keeping provision by failing to maintain records of the hours worked by Plaintiff and Class Members.

33.    Both Defendants acted as a single enterprise that perform the related activities of operating car dealerships.  Both entities perform related activities because they operate car dealerships and use similar trade name of AutoNation in their advertisements.

34.    Both entities advertise through the same website www.autonation.com to market the sale of vehicles. Visitors to the shared website are encouraged to search for their vehicle by year, make and model. Based on a variety of filters such as model or location, visitors to www.autonation.com are directed to the AutoNation dealer that is closest to them or has the vehicle they want. As a result, the Defendants held themselves out singly or collectively.

35.    According to Defendant AutoNation's 2018 10-K, "AutoNation, Inc., through its subsidiaries, is the largest automotive retailer in the United States. As of December 31, 2018, we owned and operated 326 new vehicle franchises from 239 stores located in the United States, predominantly in major metropolitan markets in the Sunbelt region."

https://s22.q4cdn.com/689426802/files/doc_financials/annual_reports/2018/AutoNation-2018 Annual-Report.pdf

36.    Both Defendants sell AutoNation-branded parts and accessories, AutoNation-branded Customer Financial Services products (including extended service and maintenance contracts and other vehicle protection products designed and controlled by Defendant AutoNation.

37.     Defendant AutoNation is able to improve financial controls and lower servicing costs by maintaining many key store-level accounting and administrative activities in their Shared Services Center located in Irving, Texas. Defendant AutoNation leverage its large scale to reduce costs related to purchasing certain equipment, supplies, and services through national vendor relationship.  All of this results in centralize decision-making authority by the same management over both entities.

38.     Defendant AutoNation acted directly or indirectly interest of Defendant AutoNation Ford in relations to Plaintiff and Class Members.  Both Defendants use the same employment manuals, policies and use centralize and shared human resources.

39.     Plaintiff and Class Members are under the common control of both Defendants.  Defendant created the *Associate Handbook* and *Code of Business Ethics* that was used by Defendant AutoNation Ford.  Defendant AutoNation created the AutoNation Vision and AutoNation Mission that Defendant AutoNation Ford follows. The General Policies and Standards of Conduct that both Defendants used for plaintiff and the Class Members were created by Defendant AutoNation.

40.     Defendant AutoNation Ford relied on Defendant AutoNation the Equal Employment Opportunity (EEO) policy promulgated and maintained by Defendant AutoNation at www.DealerCentral.net under the Business Ethics Program link. Employees for both companies were provided with a process where they could seek guidance on routine workplace issues or report concerns to shared Corporate or Region Human Resources, legal department, Business Ethics Committee or the AlertLine.

## COLLECTIVE ACTION ALLEGATIONS

41.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

42.     Defendants' illegal "piece work" with no overtime system extends beyond Pham.

43.     Defendants has paid numerous piece rate workers using the same unlawful scheme.

49.     Defendants employ a piece work pay policy to all Class members where the flat rate compensation is not linked to the price charged to the customer for the window tinting service sold.

50.     Defendants paid Plaintiff and Class Members at a flat rate per vehicle they tinted without regard to the value of the service performed are considered to be paid on a piece rate basis and not on the basis of commissions.   The flat-rate that Defendants pay the Plaintiff and Class Members do not correlate with the cost of window tint packages charged to the customers.

52.     Plaintiffs Pham  bring this collective action on behalf of all window tint installers and tint specialist  employed by Defendants to recover monetary damages owed by Defendants to Plaintiffs and members of the putative Classes for all the overtime compensation for all the hours he and they worked in excess of forty (40) each week.

53.      Like Plaintiffs, these Class Members regularly worked more than 40 hours in a week.

53.     Defendants failed to pay these Class Members any overtime.   Because these employees are similarly situated to Plaintiffs, and are owed overtime for the same reasons, the opt-in classes are properly defined as:

> **All Tinting Specialist or tint installers employed by Texan Ford Inc., d/b/a Auto Nation Ford Katy or AutoNation, Inc. in the United States. This group includes all workers employed in States where Defendants have car dealerships.**

44.     The workers impacted by Defendants' "piece rate" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).   Therefore, the collective is properly defined as:

## I.       FLSA OVERTIME AND RECORDKEEPING VIOLATIONS

35.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

36.     Plaintiff routinely worked more than forty (40) hours per week for Defendants.

37.     Defendants did not pay for the overtime hours that Plaintiff and the Class Members worked.

38.     Defendants did not pay Plaintiff for his hours of work in excess of forty (40) per week at one and a half (1.5) times their regular rate, as required by the FLSA.

39.     Additionally, Defendants failed to keep complete and accurate records of the hours worked by Plaintiff in violation of the FLSA. 29 C.F.R. § 516.

40.     The Plaintiff was a non-exempt employee.

41.     Defendants did not provide Plaintiff with a method of reporting all of his overtime hours worked, i.e. hours worked over 40 hours in a workweek.

42.     Thus, Defendants had knowledge that their method of paying Plaintiff was in violation of the FLSA and not based on a good faith and reasonable belief that its conduct was in compliance with the FLSA.

43.     Accordingly, the Plaintiff is entitled to compensation for his overtime worked in an amount equal to one and one-half times his regular rates of pay for each hour worked over forty in each workweek.

44.     Moreover, Defendants' conduct has been both willful and in bad faith and especially designed to avoid its legal obligations pursuant to the FLSA. Plaintiff is entitled to liquidated damages for such conduct pursuant to the FLSA. Defendants' practice is in deliberate violation of FLSA requirements.

45.     Plaintiff and those similarly situated are also entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**PRAYER**

WHEREFORE, Plaintiff, Johnny Pham, prays for relief as follows:

a.      An order allowing this action to proceed as a collective action under the FLSA and directing notice to all hourly employees who received straight time for overtime;

b.      Judgment awarding Plaintiff and those similarly situated all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA;

c.      An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

d.      All such other and further relief to which Plaintiff and those similarly situated may show themselves to be justly entitled.

Respectfully submitted:

By: /s/ Trang Q. Tran

Trang Q. Tran
**TRAN LAW FIRM**
2537 S. Gessner, Suite 104
Houston, TX 77063
Telephone: (713) 223-8855
Facsimile: (713) 623-6399
ttran@tranlawllp.com
service@tranlawllp.com

**ATTORNEYS FOR PLAINTIFF AND SIMILARLY SITUATED INDIVIDUALS**